62 P.3d 970

### The ROMAN CATHOLIC DIOCESE OF PHOENIX, Petitioner,

v.

### The SUPERIOR COURT of Arizona, In and For the COUNTY OF MARICOPA and Eddward Ballinger, a Judge Thereof, Respondent Judge,

State of Arizona, Real Party in Interest.

#### No. 1 CA–SA 03–0002.

Court of Appeals of Arizona,
Division 1, Department. E.

Feb. 7, 2003.

---

Lewis and Roca, LLP, By James J. Belanger and Robert G. Schaffer, Phoenix, Attorneys for Petitioner.

Richard M. Romley, Maricopa County Attorney, By Paul J. McMurdie and Catherine Leisch, Deputy County Attorneys, Phoenix, Attorneys for Real Party in Interest.

## OPINION

IRVINE, Judge.

¶ 1 The Roman Catholic Diocese of Phoenix petitions this Court in a special action, challenging the trial court's order that the Diocese produce certain documents in a grand jury proceeding. The Diocese argues that the trial court applied the incorrect legal standard to determine whether documents are protected by the attorney-client privilege. We find that the case is appropriate for special action review and accept jurisdiction. Because we conclude that the trial court properly interpreted Arizona Revised Statutes ("A.R.S.") section 13–4062(2) (Supp. 2002) by applying our supreme court's interpretation of the corporate attorney-client privilege set forth in *Samaritan Foundation*

*v. Goodfarb*, 176 Ariz. 497, 862 P.2d 870 (1993), we deny relief.

## JURISDICTION

¶ 2 We have discretion to accept or deny special action jurisdiction. *State ex rel. Pennartz v. Olcavage*, 200 Ariz. 582, 585, ¶ 8, 30 P.3d 649, 652 (App.2001). "Special action jurisdiction is appropriate when there is no plain, speedy and adequate remedy by way of appeal" or "in cases involving a matter of first impression, statewide significance, or pure questions of law." *Id.* There is no adequate remedy by appeal when a party challenges an order to produce documents by asserting a privilege. *See, e.g., Ariz. Bd. of Med. Exam'rs v. Superior Court*, 186 Ariz. 360, 361, 922 P.2d 924, 925 (App.1996) (finding special action jurisdiction appropriate "in cases involving the assertion of a privilege against discovery orders"). Additionally, the Diocese has presented a pure question of law. We therefore accept jurisdiction.

## FACTS AND PROCEDURAL HISTORY

¶ 3 The State of Arizona served two grand jury subpoenas on the Diocese for various documents. The Diocese asserted that the corporate attorney-client privilege and the work-product doctrine protected some of these documents and withheld them from the grand jury. The State and the Diocese agreed to allow the trial court to conduct an *in camera* review of the materials. After reviewing the documents, the trial court held a hearing to determine the appropriate standard to apply in determining which documents were protected by the corporate attorney-client privilege. It ultimately applied the privilege as set forth in A.R.S. § 13–4062(2) as interpreted in *Samaritan Foundation.* The trial court sustained the Diocese's assertion of privilege as to certain documents, required the production of other documents, and required the production of certain documents after they were redacted. The Diocese petitioned this Court to determine the appropriate standard for applying the corporate attorney-client privilege in a criminal proceeding.

## DISCUSSION

¶ 4 The Diocese asks us to interpret A.R.S. § 13–4062(2),[1] which is a statutory codification of the attorney-client privilege in criminal cases. It asks us to interpret the criminal privilege statute to incorporate the 1994 amendment to A.R.S. § 12–2234 (Supp. 2002) (amended by Ariz. Sess. Laws 1994, Ch. 334, § 1), which codifies the corporate attorney-client privilege in civil cases.[2] The Diocese argues, in essence, that both statutes are attempts to codify the same common law privilege so a change to one should be interpreted to apply to both. If we do not do so as a matter of statutory interpretation, the Diocese urges us to do so through common law. Before we consider whether the legislative amendment to the corporate attorney-client privilege for civil cases should also apply to criminal cases, we must review our supreme court's interpretation of attorney-client privilege for corporate clients.[3]

1. The statute provides that "[a] person shall not be examined as a witness in the following cases: ... An attorney, without consent of the attorney's client, as to any communication made by the client to the attorney, or the attorney's advice given in the course of professional employment."

2. The statute applicable to civil cases currently provides in relevant part:
   A. In a civil action an attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment.
   ...
   B. For purposes of subsection A, any communication is privileged between an attorney for a corporation ... and any employee, agent or member of the entity or employer regarding acts or omissions of or information obtained from the employee, agent or member if the communication is either:
   1. For the purpose of providing legal advice to the entity or employer or to the employee, agent or member.
   2. For the purpose of obtaining information in order to provide legal advice to the entity or employer or to the employee, agent or member.
   C. The privilege defined in this section shall not be construed to allow the employee to be relieved of a duty to disclose the facts solely because they have been communicated to an attorney.

3. The Diocese is treated as a corporation for purposes of the attorney-client privilege because it is a "corporation sole." *See* A.R.S. §§ 10–

¶ 5 *Samaritan Foundation* was a civil case in which the Arizona Supreme Court interpreted the standard for corporate attorney-client privilege. The court recognized that the purpose of the privilege is "to encourage the client in need of legal advice to tell the lawyer the truth" so that the attorney can provide adequate legal assistance. 176 Ariz. at 501, 862 P.2d at 874. The court also recognized that the privilege "can interfere with the search for truth when, for example, the client cannot remember that which it told its lawyer. One would like to go to the lawyer and ask." *Id.* The court further acknowledged that "the costs of the privilege are potentially much greater when asserted by a corporation over the statements of its agents than when asserted by an individual" because witness communications made by employees may be interpreted as client communications. *Id.* at 503–04, 862 P.2d at 876–77. Meanwhile, the court noted, "there is no countervailing benefit." *Id.* at 504, 862 P.2d at 877. To fulfill the purpose of the privilege with respect to corporate clients and reduce the problems, the supreme court applied a standard "that focuses on the relationship between the communicator and the need for legal services." *Id.* at 505, 862 P.2d at 878. The court held that

> where someone other than the employee initiates the communication, a factual communication by a corporate employee to corporate counsel is within the corporation's privilege if it concerns the employee's own conduct within the scope of his or her employment and is made to assist the lawyer in assessing or responding to the legal consequences of that conduct for the corporate client. This excludes from the privilege communications from those who, but for their status as officers, agents or employees, are witnesses.

*Id.* at 507, 862 P.2d at 880.

¶ 6 At the time of the *Samaritan Foundation* decision, the statutory civil and criminal attorney-client privileges were substantially similar. *See* A.R.S. §§ 12–2234 (1994), 13–4062. Although the supreme court cited both the civil and criminal codifications of the attorney-client privilege, *Samaritan Foundation,* 176 Ariz. at 501, 862 P.2d at 874, its analysis was not based on the language of either statute but on its interpretation of the general privilege. In response to *Samaritan Foundation,* the Arizona Legislature amended the civil attorney-client privilege statute to broaden the privilege for corporations in civil cases. Ariz. Sess. Laws 1994, Ch. 334, § 1. Under the 1994 amendment, *any* communications between an attorney and an employee or agent of the corporation, made for the purpose of providing legal advice or obtaining information to provide legal advice, are protected. A.R.S. § 12–2234. Under *Samaritan Foundation,* the privilege would apply only to employee-initiated communications intended to seek legal advice or to communications concerning the employee's own conduct for the purpose of assessing legal consequences for the corporation. 176 Ariz. at 507, 862 P.2d at 880. The critical distinction between the two interpretations is whether information is being sought or obtained in connection with one's own conduct as an employee.

¶ 7 The Legislature did not, however, amend the criminal attorney-client privilege statute. The Diocese argues that the criminal privilege should be interpreted to include the intent of the 1994 amendment to the civil privilege. We disagree.

■ ¶ 8 "If the statute's language is clear and unambiguous, we give effect to that language and do not apply any other rule of statutory construction." *In re Maricopa County Superior Court No. MH 2001–001139,* 203 Ariz. 351, 353, ¶ 12, 54 P.3d 380, 382 (App.2002). The statute providing for an attorney-client privilege in criminal cases is unambiguous and does not create any additional protection for corporate clients. A.R.S. § 13–4062(2). A plain reading of the 1994 amendment indicates that it does not apply to the attorney-client privilege in crim-

11901 to 10–11908 (Supp.2002). A "corporation sole" consists of one person and his successors in some particular station who are incorporated by law to maintain legal capacities and advantages, particularly that of perpetuity; the successor becomes the corporation on the person's death or resignation. *See* A.R.S. §§ 10–11904, 10–11906.

inal cases, and we will not read A.R.S. § 13–4062(2) to include the amendment.

■ ¶ 9 Moreover, to the extent that the 1994 amendment expands the attorney-client privilege interpreted in *Samaritan Foundation,* it creates a statutory privilege. We will strictly construe a statutory privilege. *See State v. Morales,* 170 Ariz. 360, 363, 824 P.2d 756, 759 (App.1991) ("Because there was no such privilege at common law, the statute [creating a physician-patient privilege] must be strictly construed."). We cannot read the 1994 amendment to A.R.S. § 12–2234 as expanding the privilege in criminal cases when the criminal statute itself does not include such an expansion.

¶ 10 The Diocese and the State both argue that the legislative history of the 1994 amendment supports their interpretations of the statutes.[4] The Diocese contends that the available history shows a legislative intent to overrule *Samaritan Foundation.*[5] The State argues that while this may be true, the Legislature knew the attorney-client privilege existed in both the criminal and civil statutes, yet the amendment only addressed the civil statute.[6] Each recognizes that one provision of the amendment was described in both the Senate and House as extending "the attorney client privilege in *any civil action* to privileged communication between an attorney['s] paralegal or assistant and the client." State Senate Memo Regarding "Strike Everything Amendment to H.B. 2161," dated March 18, 1994 at 2; Memo to House Judiciary Committee, dated April 7, 1994 (emphasis added). Nothing in the legislative history discusses how the changes contained in the bill would affect criminal cases.

¶ 11 We conclude from the language of the statute and the legislative history that the Legislature intended to modify the ruling in *Samaritan Foundation.*[7] Nevertheless, because the amendment does not address criminal proceedings, the statute is plain on its face, and because we strictly construe its terms, we cannot assume that the Legislature intended to change the privilege in criminal cases.

¶ 12 The Diocese argues that the Legislature's silence concerning criminal cases "cannot be understood as an expression of any sort of intent with respect to the attorney-client privilege in criminal proceedings." Nevertheless, if the 1994 amendment does not address criminal proceedings and the Legislature did not intend to affect the privilege in criminal proceedings, we must apply the supreme court's interpretation of the privilege in *Samaritan Foundation.* Be-

---

4. For complete discussions of the 1994 amendments, *see* David G. Campbell, *A Legislative Response to Samaritan,* 31 Ariz. Att'y 29 (Dec.1994); W. Todd Coleman, *Arizona's Attorney–Client Communication Privilege for Corporations,* 27 Ariz. St. L.J. 335 (1995); Stacey A. Dowdell, *The Extent of the Attorney Corporate–Client Privilege in Arizona,* 36 Ariz. L.Rev. 725 (1994).

5. State Senate Memo Regarding "Strike Everything Amendment to H.B. 2161," dated March 18, 1994 ("Statutory guidelines would replace the case law authority of *Samaritan,* and conform the elements of Arizona's corporate attorney-client privilege to those of the federal courts and the majority of other states' courts."); Minutes of Senate Committee on Judiciary, March 22, 1994 (same); Senate Final Revised Fact Sheet for H.B. 2161, dated April 19, 1994 (same). *See also* Memo to House Judiciary Committee, dated April 7, 1994; Memo from Donald G. Isaacson to Rep. Ernie Baird, dated April 7, 1994; Minutes of House Committee on Judiciary, 41st Leg., 2nd Regular Sess. 1–2 (April 7, 1994).

6. State Senate Memo Regarding "Strike Everything Amendment to H.B. 2161," dated March 18, 1994 ("Arizona statute provides for the attorney-client privilege in civil and criminal actions."); Senate Final Revised Fact Sheet for H.B. 2161, dated April 19, 1994 (same).

7. The 1994 amendment did not simply overrule *Samaritan Foundation* by adopting the United States Supreme Court's interpretation of the attorney-client privilege in *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). *See* Campbell, *supra* note 4, at 32–33. The legislation defined the privilege differently, extended it to entities other than corporations, and expressly applied it to an attorney's paralegals and assistants. Consequently, even in civil cases, the Arizona privilege differs from the privilege applicable in federal and other states' courts. *Id.* There does not appear to be any universal standard. *See What Persons or Entities May Assert or Waive Corporation's Attorney–Client Privilege—Modern Cases,* 28 A.L.R. 5th 1 (1995); *What Corporate Communications Are Entitled to Attorney–Client Privilege—Modern Cases,* 27 A.L.R. 5th 76 (1995); *Determination Of Whether A Communication Is From A Corporate Client For Purposes Of The Attorney–Client Privilege—Modern Cases,* 26 A.L.R. 5th 628 (1995).

cause the rule announced in *Samaritan Foundation* has not been modified by any "applicable statute," *see* Rule 501, Ariz. R. Evid., it remains the law for criminal proceedings.

¶ 13 We therefore reject the Diocese's argument that the provisions of A.R.S. § 12–2234 should be considered as included within the attorney-client privilege applicable to criminal proceedings. The 1994 amendment expressly applies only to civil cases, and we strictly construe the amendment as not expanding the privilege in criminal cases. Based on our interpretation of the applicable statutes and case law, we conclude that the trial court correctly held that A.R.S. § 13–4062(2) and *Samaritan Foundation* are the applicable law in this proceeding.[8]

■ ¶ 14 Apart from statutory interpretation, the Diocese makes several other arguments as to why a broader privilege should be found in criminal proceedings. The Diocese argues that we must interpret the attorney-client privilege in criminal cases to be identical to the privilege in civil cases because third parties will request discovery of documents produced in criminal cases that would otherwise be protected by the privilege. In particular, the Diocese is concerned with civil discovery requests for documents submitted to the grand jury. Initially, we note that such documents are still protected by A.R.S. § 13–2812 (2001), the grand jury secrecy statute. *See Samaritan Health System v. Superior Court*, 182 Ariz. 219, 220, 895 P.2d 131, 132 (App.1994). Any documents produced by the Diocese for the purpose of grand jury proceedings will generally not be available to third parties. *Id.* Even though this may not cover every possible scenario, we cannot interpret the privilege based on speculative harms.

¶ 15 The Diocese also asserts that if the privilege is different for criminal and civil cases, communications will be discouraged. The supreme court has already rejected the argument that a limited privilege would deter attorney-client communications in *Samaritan Foundation*. 176 Ariz. at 506, 862 P.2d at 879. The court noted that the application of the privilege merely placed individuals and corporations in identical positions. *Id.* Additionally, the court found that notwithstanding the privilege:

> It is ... in the interest of the corporation to be informed, and in most cases it will conclude that ignorance is too high a price to pay to avoid taking witness statements that are potentially discoverable. After all, even those statements have the more qualified protection afforded by the work product doctrine. We are not persuaded that a corporation will intentionally put itself in the position of being the last to know the facts when it is facing potential liability for the acts of its agents.

*Id.* In effect, the supreme court held that the purposes underlying the attorney-client privilege are adequately protected by the narrow privilege set out in *Samaritan Foundation*.

■ ¶ 16 The Diocese further argues that having different privileges in criminal and civil proceedings is irrational and will lead to absurd and unworkable results. The Diocese appears to argue that the attorney-client privilege must be uniform and that we must apply the broadest version of that privilege uniformly, even if it is made in a limited context. We see it differently. As noted above, the supreme court determined the scope of the essential attorney-client privilege applicable to all court proceedings in *Samaritan Foundation*. The court found that the privilege was a narrow one intended to ensure open communication between the attorney and his or her client without hiding under the shadow of privilege the statements of important witnesses who happen to be

---

**8.** Several commentators have raised questions about the constitutionality of the legislative attempt to overrule *Samaritan Foundation*. Campbell, *supra* note 4, at 34; Coleman, *supra* note 4, at 345–50. They note that legislative amendments to the rules of evidence may violate the separation of powers by infringing on the supreme court's authority to adopt rules of procedure for the courts. *See Readenour v. Marion* *Power Shovel*, 149 Ariz. 442, 445, 719 P.2d 1058, 1061 (1986). We do not address any constitutional issues for two reasons. First, the State does not raise any constitutional issue, and the trial court, although recognizing its existence, did not address it. Second, our conclusion that the 1994 amendments do not apply to criminal proceedings makes it unnecessary to address any broader issue.

employees of a corporation. *Samaritan Foundation*, 176 Ariz. at 505–06, 862 P.2d at 878–79. The Legislature may create or expand privileges by statute, and courts "will recognize [such] rules when they are 'reasonable and workable,' supplementing rather than contradicting the rules which the court has promulgated." *Readenour*, 149 Ariz. at 445, 719 P.2d at 1061. Here, the Legislature has essentially grafted a statutory attorney-client privilege on top of the privilege recognized by the supreme court. So long as attorneys and their clients are entitled to the benefits of the basic privilege, which is all that the supreme court has said is necessary to protect the interests served by the privilege, we cannot say it is irrational for the Legislature to confine its expanded statutory privilege to civil actions.

¶ 17 Moreover, the Legislature has previously created statutory privileges applicable only in civil cases. *See* A.R.S. § 32–749 (2002) (privilege for information acquired by accountants); *State v. O'Brien*, 123 Ariz. 578, 585, 601 P.2d 341, 348 (App.1979) (holding that the accountant-client privilege does not apply to criminal prosecutions). The Legislature has also limited the scope of the physician-patient and husband-wife privileges in cases involving a child's neglect, dependency, abuse or abandonment. *See* A.R.S. §§ 8–805(B) (1999), 13–3620 (2001); *see also* A.R.S. §§ 13–4062 (the husband-wife privilege does not apply to a criminal action or proceeding for a crime committed against the other spouse), 46–453(A) (1997) (duty to report the abuse or neglect of an adult).[9] The Legislature has obviously recognized that the policy of protecting confidential communications that underlies privileges can be outweighed in some circumstances by the need to find the truth. The 1994 amendment addresses only civil cases. We will not assume that the Legislature meant anything other than what it said.

## CONCLUSION

¶ 18 We conclude that the trial court applied the correct standard to determine whether the documents in question were protected by the attorney-client privilege. For the above reasons, we deny relief.

CONCURRING: G. MURRAY SNOW, Presiding Judge, and SUSAN A. EHRLICH, Judge.

---

9. Sections 8–805(B) and 46–453(A), A.R.S., expressly exclude the attorney-client privilege from the lists of privileges that do not apply to any litigation involving child or adult abuse. These statutes were enacted prior to the *Samaritan Foundation* decision so we do not read into them any legislative intent concerning the scope of the attorney-client privilege.