130 P.3d 991

**STATE of Arizona ex rel. Andrew P. THOMAS, Maricopa County Attorney, Petitioner,**

v.

**The Honorable Barry C. SCHNEIDER, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Pamela Kathleen Hanna, Thomas Roy Eggleston, David Michael Goulet, Steven Edward Frate and Manuel Diaz Martinez, Real Parties in Interest.**

**No. 1 CA–SA 05–0022.**

Court of Appeals of Arizona, Division 1, Department D.

March 30, 2006.

Andrew P. Thomas, Maricopa County Attorney By Gerald R. Grant, Deputy County Attorney, Phoenix, Attorneys for Petitioner.

Quarles & Brady Streich Lang LLP By Darrow K. Soll, Hector J. Diaz, Phoenix, Attorneys for Real Party in Interest Hanna.

Lewis and Roca LLP By Frederick R. Petti, Stephen M. Hart, Phoenix, Attorneys for Real Party in Interest Eggleston.

Rake & Catanese PC By M.E. Rake, Jr., David J. Catanese, Benjamin Robert Jemsek, Phoenix, Attorneys for Real Party in Interest Goulet.

William Foreman, Phoenix, Attorney for Real Party in Interest Frate.

Tryon Heller & Gaughan PC By David M. Heller, Phoenix, Attorneys for Real Party in Interest Martinez.

## OPINION

SNOW, Judge.

¶ 1 This special action concerns whether the testimony before the grand jury of former Glendale City Attorney Richard Flaaen disclosed communications protected by the attorney-client privilege.[1]

¶ 2 The State obtained criminal indictments against five Glendale city officials—four city council members and the city clerk—who are the real-parties-in-interest in this special action. The grand jury issued the indictments after hearing the testimony of several witnesses, including Flaaen. The trial court determined that Flaaen improperly disclosed communications protected by the attorney-client privilege and remanded the matter to the grand jury for a redetermination of probable cause on this and other grounds. The State brought this special action, arguing that the attorney-client privilege does not protect Flaaen's communications with the real-parties-in-interest. Because the State has no adequate remedy on appeal, we accept jurisdiction. However, because the trial court was correct, we deny the relief requested by the State.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 3 In November 2003, Richard Flaaen, the Glendale City Attorney, was placed on administrative leave by the City of Glendale due to an investigation that apparently disclosed that he misused both his City computer and the access that the City provided him to the internet. He was informed that, as a result of the investigation, he would likely be terminated if he did not resign. Flaaen resigned on November 29, 2003. He was advised upon his resignation that the City would not waive the attorney-client privilege with respect to any aspect of his employment.

¶ 4 Flaaen then filed a lawsuit naming the City and some of its council members as defendants. He alleged in the suit that he had been constructively discharged for "whistleblowing" activity resulting from the failure of members of the city council to timely file their 2002 financial disclosure statements and the backdating of those documents by some council members when subsequently filed.

¶ 5 After his discharge, Flaaen sent a letter to the Maricopa County Attorney's Office alleging that Pamela Hanna, the city clerk, and Thomas Eggleston, Steven Frate, David Goulet and Manuel Martinez, members of the city council, committed criminal acts in relation to the filing of the 2002 financial disclosures of those council members. He then discussed his version of those events with an investigator for the County Attorney.

¶ 6 When the County Attorney decided to seek indictments against the real-parties-in-interest, Flaaen was called to appear before the grand jury as were other witnesses. He there testified to communications he had shared with the various real-parties-in-interest both in private and in an executive session of the Glendale City Council. For purposes of this special action, the parties apparently agree that the charges in the indictment arise from the following events.

¶ 7 The Glendale City Clerk's Office normally informed city office holders when they were obliged to file financial disclosure statements pursuant to state law. Due to an error, the clerk's office misinformed city council members about when they were obliged to file their disclosure statements for 2002. As a result, the members of the Glendale City Council did not file their 2002 financial disclosure statements by the due date of January 31, 2003. After discovering

---

1. Arizona Revised Statutes ("A.R.S.") § 13–2812 (2001) makes it a misdemeanor to disclose the nature or substance of grand jury testimony or decisions except "when permitted by the court in furtherance of justice." We conclude that, to the limited extent this opinion discusses such testimony or proceedings, it is permitted in the furtherance of justice. Further, to the extent that this opinion characterizes proceedings at an executive session of the Glendale City Council, it limits, to the extent possible, disclosure of communications made pursuant to A.R.S. § 38–431.03(F) (2001).

the error by her office in August 2003, the city clerk, Hanna, conferred with Flaaen.

¶ 8 The council members subsequently filed their 2002 financial disclosure statements. Goulet, Martinez, Frate, and Eggleston were the first four council members to bring their 2002 financial disclosures to Hanna's office. As they did so, the notary backdated the notary bar on the document to January 31, 2003. The office stamp indicating the date on which the document was received by the city clerk's office was similarly backdated.

¶ 9 When Mayor Elaine Scruggs brought her disclosure statement she objected to the backdating of the document. She and Hanna proceeded to Flaaen's office where each had communications with Flaaen. Flaaen thereafter sought out and conferred with Eggleston, Frate, Goulet and Martinez. The matter was subsequently a subject of an executive session held by the Glendale City Council at which Flaaen and the real-parties-in-interest were present.

¶ 10 Flaaen's testimony before the grand jury revealed the content of both his private communications with all of the real-parties-in-interest and the content of communications among those present at the executive session in which the matter was discussed. The State admits that Flaaen never indicated in any of these communications with the real-parties-in-interest that he did not represent them with respect to this matter or that their communications were otherwise not subject to the privilege.

¶ 11 The grand jury subsequently also indicted the four council members for presentment of false instruments. It indicted the city clerk on four counts of tampering with public records and four counts of destroying public records.

¶ 12 Each of the real-parties-in-interest filed a motion to remand to the grand jury, asserting numerous reasons why a redetermination of probable cause was necessary. The trial court granted the motions because: (1) Flaaen, in his testimony before the grand jury, had disclosed communications protected by the attorney-client privilege; (2) Flaaen's testimony had misled the grand jury concerning the reason for his termination; (3) statements made to the grand jury had created the impression that Flaaen had been forced to resign because he was a whistleblower; and (4) the grand jury had not been informed as to the applicable Glendale City Code provisions concerning the duties of the city attorney and clerk.[2]

¶ 13 The State filed a motion to reconsider, which the court denied. This special action followed.

## ANALYSIS

### A. Jurisdiction

■ ¶ 14 This court may appropriately accept special action jurisdiction because the State has no adequate remedy by appeal. See Ariz. R.P. Spec. Act. 1(a) (2006). If, because of the attorney-client privilege, the State is unable to present the communication between Flaaen and the city officials to the grand jury, it may not be able to establish probable cause on remand. The State would have no right to appeal the determination by a grand jury that probable cause does not exist. See State ex rel. Udall v. Superior Court, 183 Ariz. 462, 464, 904 P.2d 1286, 1288 (App.1995). Thus, special action jurisdiction is appropriate to consider whether the State can present to the grand jury communications between Flaaen and the city officials. Further, special action jurisdiction is appropriate to determine the application of a testimonial privilege. See Roman Catholic Diocese of Phoenix v. Superior Court, 204 Ariz. 225, 227, ¶ 2, 62 P.3d 970, 972 (App.2003). We thus accept jurisdiction.

### B. The Attorney–Client Privilege.

■ ¶ 15 Pursuant to the attorney-client privilege, unless the client consents, an attorney may not disclose communications the attorney received from or made to a client in the course of the attorney's professional employment. A.R.S. § 13–4062(2) (2001).

2. In this special action, the State does not challenge the trial court's order to remand. It only challenges the court's determination that communications disclosed by Flaaen to the grand jury were protected by the attorney-client privilege.

¶ 16 Like other legal entities, a city "can only act through its agents." *Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 502, 862 P.2d 870, 875 (1993). In assessing whether a city attorney's communication with city officers or employees will be protected by the city's attorney-client privilege, Arizona has adopted a "functional approach". This functional approach focuses "on the relationship between the communicator and the need for legal services." *Id.* at 505, 862 P.2d at 878. Thus, if the communication "concerns the employee's own conduct within the scope of his or her employment and is made to assist the lawyer in assessing or responding to the legal consequences of that conduct," then the communication falls within the city's privilege. *Id.* at 507, 862 P.2d at 880; *see also Ariz. Dep't of Econ. Sec. v. O'Neil*, 183 Ariz. 196, 198, 901 P.2d 1226, 1228 (App.1995) (holding that governmental entities may assert attorney-client privilege to prevent disclosure of information otherwise required by statute). On the other hand, as the court in Samaritan clarified, "[i]f the employee is not the one whose conduct gives rise to potential ... liability, then it is fair to characterize the employee as a 'witness' rather than as a client." 176 Ariz. at 504, 862 P.2d at 877.

¶ 17 In addition to the attorney-client privilege belonging to the city, in this case a Glendale city ordinance independently requires the city attorney to "be the chief legal adviser of all officers, departments, and agencies and of all officers and employees in matters relating to their official powers and duties." Glendale, Ariz., Glendale City Ordinance art. IV, § 4. The ordinance thus provides not only that the city attorney will represent the City, but also its individual officers in "matters relating to their official ... duties." Thus, city officers may claim their own privilege in conversations with the city attorney at least insofar as the communications concerned "matters relating to their official powers and duties." [3]

¶ 18 In its petition, the State makes no argument that the communications between

Flaaen and the city officials did not concern the officials' own conduct, nor does it argue that Flaaen was not the attorney for the real-parties-in-interest as it pertained to their official powers and duties. The State argues instead that the attorney-client privilege does not apply to communications between a government official and a government attorney in a grand jury proceeding against the government official. In addition, it argues that three specific communications that were in Flaaen's testimony before the grand jury are not privileged because they do not meet other requirements of the privilege as set forth by *Samaritan*. We do not agree with either argument. We thus deny the relief requested by the State.

## C. Arizona Statute Makes All Qualifying Communications Subject to the Privilege.

¶ 19 In this state, it is the province of the supreme court to make rules governing evidentiary privileges. Ariz. Const. art. 6, § 5; *see also State ex rel. Collins v. Seidel*, 142 Ariz. 587, 590–91, 691 P.2d 678, 681–82 (1984) (Rules of Evidence promulgated pursuant to court's power under Const. art. 6, § 5.); *State v. Gilfillan*, 196 Ariz. 396, 403, ¶ 26, 998 P.2d 1069, 1076 (App.2000) (Rules of evidence are generally regarded as procedural.). However, in promulgating its evidentiary rules, the supreme court deferred to any legislative definition of "privilege." It specified that questions of privilege are governed by the common law except when statute dictates otherwise. "Except as otherwise required by ... applicable statute or rule, privilege shall be governed by the principles of the common law as they may be interpreted in light of reason and experience." Ariz. R. Evid. 501.

¶ 20 The Legislature has, in fact, defined the scope of the attorney-client privilege by statute. We thus follow that definition. *See, e.g., Roman Catholic Diocese*, 204 Ariz. at 229, ¶ 11, 62 P.3d at 974 (The Legislature may expand the common law attorney-client privilege by statute in a civil context without

---

3. In appropriate cases, a lawyer may represent both an organization and its officers. Ariz. R. Sup.Ct. 42, ER 1.13(g) ("A lawyer representing an organization may also represent any of its ... officers, employees ... or other constituents, subject to ... ER 1.7.").

correspondingly expanding the privilege in criminal context.).

¶ 21 In Title 13 of the Arizona Revised Statutes, the Legislature sets forth privileges that apply in criminal proceedings in this state. Section 13–4062(2) specifies "[a] person shall not be examined as a witness in the following cases . . . (2) An attorney, without consent of the attorney's client, as to any communication made by the client to the attorney, or the attorney's advice given in the course of professional employment."

■ ¶ 22 We interpret statutes according to their plain meaning. *In re Maricopa County Superior Court No. MN 2001–001139,* 203 Ariz. 351, 353, ¶ 12, 54 P.3d 380, 382 (App.2002) (citations omitted). The plain meaning of § 13–4062(2) is that the attorney-client privilege applies to all qualifying communications between an attorney and a client. The statute does not purport to exclude communications made to government attorneys that would otherwise fit within the privilege. To read such an exception into the statute would contradict its plain language, which admits of no exception.

¶ 23 The State fairly points out, however, that the attorney-client privilege is limited in a way not described in the statute. For example, the privilege is not extended when there is a prima facie showing that a communication with an attorney was used to perpetrate a crime or fraud. *See, e.g., Buell v. Superior Court,* 96 Ariz. 62, 68, 391 P.2d 919, 924 (1964) (citation omitted); *Pearce v. Stone,* 149 Ariz. 567, 573, 720 P.2d 542, 548 (App.1986). The State makes no argument that any of the real-parties-in-interest sought to perpetrate a crime or fraud through their communications with Flaaen. Thus, it does not argue that the crime-fraud exception applies. It merely argues that, as is the case with the crime-fraud exception, sufficient policy reasons justify an exception to the privilege that is not contained in the plain text of the statute.

¶ 24 The State cites cases from two federal court of appeals that hold that the federal common-law attorney-client privilege does not extend to communications between a government official and a government lawyer in criminal proceedings against the government

official. *In re Witness Before Special Grand Jury 2000–2,* 288 F.3d 289, 293 (7th Cir. 2002); *In re Lindsey,* 158 F.3d 1263, 1276 (D.C.Cir.1998); *see also In Re Grand Jury Subpoena Duces Tecum,* 112 F.3d 910, 920–21 (8th Cir.1997). According to these cases, a government attorney has an obligation both to the governmental client and to the public. Thus, "[w]hen government attorneys learn, through communications with their clients, of information related to criminal misconduct, they may not rely on the government attorney-client privilege to shield such information from disclosure to a grand jury." *Lindsey,* 158 F.3d at 1278; *see also Witness Before Special Grand Jury,* 288 F.3d at 293 ("It would be both unseemly and a misuse of public assets to permit a public official to use a taxpayer-provided attorney to conceal from the taxpayers themselves otherwise admissible evidence of financial wrongdoing, official misconduct, or abuse of power.").

¶ 25 While we recognize the appeal of these policy arguments, there are competing policies that have been accepted by a different federal appellate court. In explicitly rejecting the approach adopted by the other circuits, the Second Circuit observed that government representatives need recourse to attorneys with whom they may have confidence to promote the full disclosure necessary to obtain accurate legal advice that leads to good government:

> It is crucial that government officials, who are expected to uphold and execute the law and who may face criminal prosecution for failing to do so, be encouraged to seek out and receive fully informed legal advice. Upholding the privilege furthers a culture in which consultation with government lawyers is accepted as a normal, desirable, and even indispensable part of conducting public business.

*In re Grand Jury Investigation,* 399 F.3d 527, 534 (2d Cir.2005); *see also In re Grand Jury Subpoena,* 886 F.2d 135, 137–38 (6th Cir.1989). Thus, it explicitly recognized that the attorney-client privilege applies to communications between government officials and government lawyers even in the context of a criminal prosecution.

¶ 26 At oral argument, the State conceded that these policy arguments support recognizing the existence of the attorney-client privilege in cases involving a criminal investigation of a government official. The State nevertheless argues that the need to foster the public accountability of government officials predominates and thus that we should find that the attorney-client privilege does not extend to communications between government officials and their government lawyers. We decline to do so.

¶ 27 Here, unlike the crime-fraud exception, there is a rational policy that supports the extension of the attorney-client privilege to conversations between a government official and a government attorney, even in the context of a criminal investigation. A government entity is no less in need of informed legal advice than is its private counterpart. Questions may arise after the fact about the propriety of action taken by a government official. As the court in *Samaritan* indicated, "[t]he privilege is intended to encourage the client in need of legal advice to tell the lawyer the truth." 176 Ariz. at 501, 862 P.2d at 874. Refusing to recognize the privilege in the communication between a government official and a government attorney because a government official may ultimately be criminally liable for the conduct for which he or she seeks legal advice would deprive the government entity of the information it may immediately need to take appropriate remedial action or otherwise operate fully and effectively. "We ... reject the idea that because government employees can confer with private counsel to represent their own, individual interests, the privilege is somehow less important when applied to government counsel. The privilege serves to promote the free flow of information to the attorney (and thereby to the client entity) as well as to the individual with whom he communicates." *In Re Grand Jury Investigation*, 399 F.3d at 535. There is, thus, a reasonable basis supporting the application of the attorney-client privilege in this context.

¶ 28 While it might have chosen to do otherwise, the Legislature, through the language of the statute, has extended to government officials the same attorney-client privilege to which agents of private entities or, in appropriate cases, private persons in specified capacities are entitled. We do not disregard plain statutory language in favor of arguments about which of two competing legitimate public policies is preferable. Those arguments must be presented to the legislature. *Grand Canyon Trust v. Ariz. Corp. Comm'n*, 210 Ariz. 30, 38, ¶ 35, 107 P.3d 356, 364 (App.2005) (citations omitted). We thus reject the State's argument that the attorney-client privilege in Arizona does not extend to criminal proceedings involving government officials conferring with government attorneys in light of the statute's plain language to the contrary.

### D. The Communications Were Subject To Privilege.

¶ 29 The State argues that, even if the privilege does extend to communications between government officials and their government lawyers, Flaaen testified before the grand jury to specific statements made by Hanna, Frate and Eggleston that are not entitled to attorney-client protection because they do not comply with other requirements of the privilege set forth in *Samaritan*. The court in *Samaritan* noted that, for a privilege to exist, "the communication must be made to or by the lawyer for the purpose of securing or giving legal advice, must be made in confidence, and must be treated as confidential." 176 Ariz. at 501, 862 P.2d at 874 (citation omitted).

¶ 30 The three communications that the State now argues are not in compliance with these requirements are: (1) Flaaen's testimony as to separate statements made to him by Eggleston and by Frate in private sessions with each of them after he had advised each of the potential legal ramifications of certain acts; (2) Flaaen's testimony as to Hanna's statements made during the executive session; and (3) his testimony as to specific statements made by Eggleston and Frate during the executive session in response to Hanna's statement. The State asserts that these statements were either not made for the purpose of seeking legal advice or were not made in confidence or treated as confidential. While this may be the State's

view, it does not control because the existence of the attorney-client privilege is evaluated from the perspective of the party making the communication to the attorney. " 'An attorney-client relationship is said to exist when the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice.' " *Alexander v. Superior Court,* 141 Ariz. 157, 162, 685 P.2d 1309, 1314 (1984) (quoting *Trinity Ambulance Serv., Inc., v. G & L Ambulance Serv., Inc.,* 578 F.Supp. 1280, 1283 (1984)); *see also State v. Fodor,* 179 Ariz. 442, 448, 880 P.2d 662, 668 (App. 1994) ("The test for determining whether a communication is protected by the attorney-client privilege is a subjective one; it focuses primarily on the state of mind of the client.") (citations omitted).

■ ¶ 31 In this case the city ordinance, and the real-parties' status as city officials, gave Frate, Eggleston and Hanna reason to believe they were represented, at least in their official capacities, by Flaaen. The State acknowledges that Flaaen never indicated to Frate, Eggleston or Hanna that he did not represent them, and it offers us nothing in Flaaen's interactions with the officials that would lead them so to believe. When a government attorney otherwise represents both an entity and its officials, and circumstances arise in which the attorney believes their interests may conflict, the attorney is ethically obliged to clearly inform both the entity and its officials concerning the scope of the attorney's representation so that those who might otherwise believe a confidential relationship exists do not compromise their legal interests. Ariz. R. Sup. Ct. 42, ER 1.13(f) ("In dealing with an organization's ... officers ... a lawyer shall explain the identity of the client when the lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing."). In the absence of such a clarification, a communication made by a government official to a government attorney may be subject to the privilege even if the attorney cannot appropriately represent the communicant because the attorney-client privilege belongs to the communicant. *Buell,*

96 Ariz. at 68, 391 P.2d at 923–24; *Church of Jesus Christ of Latter–Day Saints v. Superior Court,* 159 Ariz. 24, 28, 764 P.2d 759, 763 (App.1988).

¶ 32 According to the facts asserted by the State, after his conversations with Hanna and Mayor Scruggs, Flaaen separately sought out council members Frate and Eggleston. He initiated private communications with each of them in the member's office in which he discussed the ramifications of various actions. Frate and Eggleston made spontaneous responses. Evaluating the communications from the perspective of Frate and Eggleston, such communications are at the core of those covered by the attorney-client privilege. We cannot conclude that the court erred in holding such communications covered by the attorney-client privilege.

¶ 33 The State also asserts that Hanna's statements made during executive session, and Frate and Eggleston's comments in response thereto, were not confidentially made precisely because there were others present when the communications were made. We reject the implication of the State's argument that a privileged communication cannot occur when more than one represented party is present. It ignores that an executive session exists in part to provide a mechanism by which governmental bodies can receive confidential legal advice and conduct other confidential business. A.R.S. § 38–431.03. The statutes governing executive sessions clearly specify that no disclosure of information that occurs at an executive session constitutes "a waiver of any privilege, including the attorney-client privilege." A.R.S. § 38–431.03(F). Thus, communications that occur with governmental bodies in executive session can be subject to the attorney-client privilege even though there are a number of persons present during the communication. *See, e.g., Gipson v. Bean,* 156 Ariz. 478, 482–83, 753 P.2d 168, 172–73 (App.1987) (Attorney-client privilege may protect communications occurring at executive session even when such communications are not otherwise protected by executive-session confidentiality statute.).

¶ 34 The State also ignores the fact that those present at the meeting included Hanna, the city clerk, Flaaen, the city attorney, and the members of the city council. While Hanna is not a member of the city council, Hanna had been requested to attend the meeting to give facts concerning her conduct on which legal advice and other actions could be, and presumably were, based. Flaaen, as city attorney, is required to give legal advice not only to the city council, but also to Hanna in her role as city clerk. When the session related in part to the division in responsibility between council members and the city clerk, and the further legality of actions taken by both the clerk and council members, we cannot say that any attorney-client privilege was lost due to a perceived lack of confidentiality when all persons present had reason to believe they were represented by Flaaen on a matter of common interest or concern. The State pursues no argument in this special action that the executive session was inappropriately convened or that legal advice was neither sought nor received during the executive session. According to the description of the session in the pleadings filed herein, such advice was provided.

¶ 35 We further note that, those who were present at the executive session had an additional reason to believe that comments made in the executive session were confidential. Pursuant to statute, statements made in executive session are confidential whether or not they are otherwise privileged, subject to only a few exceptions. "[D]iscussions made at executive sessions shall be kept confidential except from ... [a] county attorney or the attorney general when investigating alleged violations of [the open-meeting law]." A.R.S. § 38–431.03(B)(4); *see also* A.R.S. § 38–431.03(F). The State makes no argument that Flaaen disclosed the communications made in the executive session pursuant to a county attorney's investigation of a violation of the open-meeting law. In this special action the State has dropped any argument that the executive session was not appropriately convened, and it offers us no other argument as to why the executive-session

privilege would not apply. There is therefore a basis on which the superior court could have appropriately determined that the communicants reasonably believed that the requisite confidentiality existed in the executive session to have an attorney-client communication.

■ ¶ 36 The State finally argues that the statements made by Frate and Eggleston in executive session in response to Hanna's statements were not made for the purpose of receiving legal advice or permitting Flaaen to provide such advice. Because the State made no such argument below, Frate and Eggleston were prevented from introducing evidence concerning whether they made the statements and the context in which any statements may have been made. This court is not a finder of fact. Application of the attorney-client privilege is a fact-sensitive inquiry. If the State wishes to parse communications between government officers and government attorneys to assert that particular parts of those communications are not subject to the privilege, then it must specifically present such arguments to the trial court where evidence may be presented and appropriate factual findings may be made to evaluate the privilege claim as it pertains to particular parts of a larger communication. When the pertinent factual issues have not been specifically presented to the trial court for its decision, the issue has been waived. *Schoenfelder v. Ariz. Bank*, 165 Ariz. 79, 88, 796 P.2d 881, 890 (1990) ("As a general rule, we will not review an issue on appeal that was not argued or factually established in the trial court.") (citations omitted); *Crowe v. Hickman's Egg Ranch, Inc.*, 202 Ariz. 113, 116, ¶ 16, 41 P.3d 651, 654 (App.2002).[4] Thus, we decline to consider it.

¶ 37 Further, to the extent the comments were made in executive session, they too were subject to the statutory privilege that extends to communications made in executive session and should not have been disclosed by Flaaen pursuant to that privilege. Again, the State presents us with no argument as to

4. In response to the special-action petition, Hanna's counsel requested various relief, including dismissal of this case, based on arguments that

Hanna did not present or argue before the trial court. These arguments are similarly waived.

why the executive-session privilege is inapplicable.

¶ 38 Accordingly, we reject the State's arguments that the three communications at issue were not protected by privilege.

## CONCLUSION

¶ 39 For the foregoing reasons, we accept jurisdiction of the State's special action but deny the relief requested.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge, and JOHN C. GEMMILL, Judge.

