166 P.3d 130

**STATE of Arizona ex rel. Andrew P. THOMAS, Maricopa County Attorney, Petitioner,**

**v.**

**The Honorable John R. DITSWORTH, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Harshad Patel, Real Party in Interest.**

No. 1 CA–SA 07–0065.

Court of Appeals of Arizona, Division 1, Department E.

Sept. 6, 2007.

Andrew P. Thomas, Maricopa County Attorney, By Linda Van Brakel, Deputy County Attorney, Phoenix, Attorneys for Petitioner.

Jones, Skelton & Hochuli, P.L.C., By A. Melvin McDonald, Jay R. Adleman, Phoenix, Attorneys for Real Party in Interest.

## OPINION

HALL, Judge.

¶ 1 The Maricopa County Attorney seeks special action review of the trial court's determination that incriminating statements made by Harshad Patel during an investigation by the Arizona Medical Board (the Board) are privileged pursuant to the Medical Practices Act, Arizona Revised Statutes (A.R.S.) sections 32–1401 to 32–1491 (2002 & Supp.2006), and therefore inadmissible as evidence in grand jury proceedings against him. We accept jurisdiction and grant relief in part.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Harshad Patel is a medical doctor in general practice. On August 15, 2005, P.H., a twenty-year-old female, went to Patel's office for treatment of a yeast infection and an annual pap smear. P.H. alleged that during the course of the examination, Patel inserted an ungloved finger into both her rectum and vagina while she was bent over an examination table, fondled her breasts from behind and pulled her into his lap. She also stated that as she stood to dress, she noticed that Patel's pants were unzipped. Patel and P.H. were alone in the room during this examination, in violation of office protocol. After reporting this conduct to Patel's office staff, P.H. reported it to the Maricopa County Sheriff's Office (MCSO), which initiated a criminal investigation. The matter was also reported to the Board.

¶ 3 During the course of the Board's investigation, Patel and the Board entered into three interim consent agreements restricting his practice. Patel also underwent a Board-ordered psychological evaluation, and the evaluation report recommended that Patel seek further evaluation and treatment. Accordingly, Patel participated in a two-week outpatient treatment program at the Sexual Recovery Institute (SRI), which specializes in assessment and treatment for sexually addictive behaviors. As part of an agreement Patel entered into with the Board, he authorized the release of his evaluation and treatment records from SRI to the Board.

¶ 4 In its investigative report, the Board noted that Patel, although he initially denied any inappropriate contact with P.H., made admissions while a patient at SRI:

> On August 25, 2005, while under oath, Dr. Patel denied that he touched P.H.'s breasts, rectum or vagina during the examination to [Board investigators]. Dr.

Patel later admitted during his treatment at Sexual Recovery Institute (SRI) that he touched the patient's rectum and penetrated her vagina with his finger. Dr. Patel expressed a significant amount of relief in "no longer having to hold in his secret." The Board concluded that Patel had violated the Medical Practices Act by engaging in "inappropriate sexual contact when conducting an exam on a female patient."

¶ 5 Patel subsequently sent a letter to the Maricopa County Attorney's Office providing notice of his request to appear and testify in any potential grand jury proceedings. The case was submitted to the grand jury, which was not informed of Patel's request. After the grand jury indicted Patel on four counts of sexual assault, all class two felonies, and one count of sexual abuse, a class three felony, Patel filed a motion for a new finding of probable cause.

¶ 6 In addition to asserting that the indictment should be remanded due to the prosecutor's failure to advise the grand jurors of Patel's request to appear before them and testify, Patel also asserted that he had been deprived of a substantial procedural right because the prosecutor had offered evidence of privileged statements made in the course of the Board's investigation. The State conceded that a remand was necessary because the jurors were not informed of Patel's request to testify, but it claimed that the statements Patel made during the course of the Board's investigation were not privileged. The trial court granted Patel's motion to remand and, citing *Lipschultz v. Superior Court*, 128 Ariz. 16, 19, 623 P.2d 805, 808 (1981), and *Humana Hospital Desert Valley v. Superior Court*, 154 Ariz. 396, 403, 742 P.2d 1382, 1389 (App.1987), granted Patel's motion to preclude statements he made in response to the Board's investigation, including those in the SRI report,[1] finding such statements were privileged and could not be used in further grand jury proceedings.

■ ¶ 7 The State then filed this special action. In the exercise of our discretion, we accept jurisdiction. Because the State would

have no right to appeal a grand jury's determination that probable cause does not exist, *State ex rel. Thomas v. Schneider*, 212 Ariz. 292, 295, ¶ 14, 130 P.3d 991, 994 (App.2006), it would be prevented from obtaining review of the trial court's order precluding the State from using the evidence at the grand jury proceedings in the event that Patel is not indicted. Moreover, special action jurisdiction is appropriate because the issue involves a question of statutory interpretation that is of statewide importance. *State ex rel. Udall v. Superior Court*, 183 Ariz. 462, 464, 904 P.2d 1286, 1288 (App.1995).

## DISCUSSION

### I.

■ ¶ 8 The interpretation of a statute is a question of law that we review de novo. *State v. Wilson*, 200 Ariz. 390, 393, ¶ 4, 26 P.3d 1161, 1164 (App.2001). Whether a privilege exists is also a question of law that is subject to de novo review. *Id.*

¶ 9 Patient information and records obtained by the Board and any "records or reports kept by the board as a result of the investigation procedure" are not available to the public, A.R.S. § 32–1451.01(C) (Supp. 2006), and are "absolutely privileged," *Lipschultz*, 128 Ariz. at 18–19, 623 P.2d at 807–08. Hospital and peer review records and testimony and proceedings relating to such records are also "not available to the public" and "shall be kept confidential by the board," § 32–1451.01(E), subject to a limited exception for information not privileged in its original form, *Sun Health Corp. v. Myers*, 205 Ariz. 315, 318, ¶ 8, 70 P.3d 444, 447 (App. 2003).

¶ 10 Section 32–1451(O) was added in 1982 as part of the restructuring of the Medical Practices Act, which was amended to "more effectively protect the public health, safety, and welfare." 1982 Ariz. Sess. Laws, ch. 270, § 1. Section 32–1451(O) (Supp.2006) provides:

---

1. In addition to the statements he made to SRI, Patel explained to a Board investigator that the notation "W.B." in P.H.'s medical chart stood for "well-built," which he conceded was not an appropriate medical notation.

If the board, during the course of any investigation, determines that a criminal violation may have occurred involving the delivery of health care, it shall make the evidence of violations available to the appropriate criminal justice agency for its consideration.[2]

¶ 11 The State argues that § 32–1451(O) provides an exception to the statutory nondisclosure privilege contained in § 32–1451.01(C) and (E) by requiring the Board to disclose evidence of criminal violations to law enforcement agencies. Therefore, according to the State, any statements made by Patel during the course of the Board's investigation are not protected from disclosure to law enforcement agencies by § 32–1451.01. Patel, on the other hand, asserts that § 32–1451(O) only requires the Board to give "notice" of possible criminal violations to law enforcement agencies and, thus, does not supersede the confidentiality requirements for information obtained pursuant to a Board investigation.

¶ 12 Sections 32–1451 and –1451.01 are part of a statutory scheme that places the practice of medicine under the authority of the Arizona Medical Board. A.R.S. §§ 32–1401 to 32–1491. In interpreting this scheme, we apply fundamental rules of statutory construction:

> Our primary goal in construing a statute is to determine and give effect to the intent of the legislature. Generally, when the language of the statute is clear, we follow its direction without resorting to other methods of statutory interpretation. However, statutes relating to the same subject or having the same general purpose, i.e., statutes that are in *pari materia,* should be read in connection with, or should be construed with other related statutes, as though they constituted one law.

*Pinal Vista Properties, L.L.C. v. Turnbull,* 208 Ariz. 188, 190, ¶ 10, 91 P.3d 1031, 1033 (App.2004) (internal quotations and citations omitted). The *pari materia* rule of construction "applies even where the statutes were enacted at different times, and contain no

reference one to the other[.]" *State ex rel. Larson v. Farley,* 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970). We strictly construe statutory privileges. *Roman Catholic Diocese of Phoenix v. Superior Court,* 204 Ariz. 225, 229, ¶ 9, 62 P.3d 970, 974 (App.2003).

¶ 13 The trial court relied on *Lipschultz* and *Humana* in ruling that statements attributed to Patel in the Board's investigative report are privileged. We conclude that the trial court's reliance on these cases was misplaced. Neither of these cases, which arose in the context of civil litigation, addresses whether, or the degree to which, § 32–1451.01(C) and (E) are superseded by § 32–1451(O) when the Board's investigation discloses evidence of possible criminal violations. In *Lipschultz,* a doctor was sued for medical malpractice. 128 Ariz. at 17, 623 P.2d at 806. The Board initiated an investigation and obtained medical records, reports, and statements from the doctor. *Id.* The plaintiffs then subpoenaed the Board for discovery of this information. *Id.* The Board objected to the subpoena on the grounds that it called for production of material made privileged by § 32–1451.01(C) and (E). *Id.* The trial court ordered the Board to provide the plaintiffs with certain documents, including two letters written to the Board by the doctor. *Id.* On appeal, the Arizona Supreme Court held that the letters were privileged under subsection C, which, as the court noted, "contains no exceptions and no exceptions are implied." *Id.* at 18, 623 P.2d at 807. However, *Lipschultz* was decided in 1981, before the legislature enacted § 32–1451(O). *Humana* is clearly inapposite because it dealt with issues of confidentiality and privilege arising under the Peer Review Act, A.R.S. §§ 36–445 to 36–445.01 (2003), which has no application here.

¶ 14 Patel also asserts that subsection O is a "mere notice requirement" that does not impact the nondisclosure provisions in § 32–1451.01(C) and (E). We disagree. This argument is belied by the clear language of subsection O requiring that the

**2.** The substance of § 32–1451(O) has remained unchanged with the exception that the phrase "evidence of violations" was substituted for "par-

ticulars of such violations" in 1993. Ariz. Sess. Laws, ch. 241, § 12.

Board "shall make the *evidence of violations* available to the appropriate criminal justice agency for its consideration." (Emphasis added.) Given the legislature's stated goal when it enacted § 32–1451(O) to "more effectively protect the public health, safety, and welfare," we conclude that the nondisclosure provisions of § 32–1451.01(C) and (E) do not apply when the Board "determines that a criminal violation may have occurred involving the delivery of health care[.]" A.R.S. § 32–1451(O).

¶ 15 This is not the only situation in which the legislature has distinguished between civil and criminal cases when addressing evidence involving confidential or privileged information. For example, the legislature has enacted separate statutes for the corporate attorney-client privilege, providing a broader privilege in civil proceedings than in criminal proceedings.[3] *See Roman Catholic Diocese of Phoenix*, 204 Ariz. at 231, ¶ 16, 62 P.3d at 976 (holding that "the Legislature may create or expand privileges by statute"). Although the Diocese in that case argued that having different privileges for criminal and civil proceedings would not only discourage communications between attorney and client but would lead to "unworkable results," the court noted that "[t]he Legislature has obviously recognized that the policy of protecting confidential communications that underlies privileges can be outweighed in some circumstances by the need to find the truth." *Id.* at 231, ¶ 17, 62 P.3d at 976.

¶ 16 Similarly, § 32–1451(O) reflects a legislative determination that the public interest in the investigation and prosecution of criminal offenses involving the delivery of health care outweighs the public interest in the confidentiality of Board investigations. Here, the Board acquired a report in which Patel admitted conduct implicating him in criminal activity. Section 32–1451(O) therefore required the Board to make its investigatory report available to the MCSO.

## II.

¶ 17 Our determination that § 32–1451(O) required the Board to disclose its investigato-

ry report to the MCSO does not mean that Patel's statements are necessarily admissible against him during grand jury proceedings. Patel claims that his statements are also inadmissible for two additional reasons. First, he asserts that the statements he made while receiving treatment at SRI are independently privileged as physician-patient records pursuant to § 13–4062(4). Second, he contends that the interim consent agreements provide him immunity from the use of any statements he made during the course of the Board's investigation. Because the trial court did not address either of these claims, we do not consider them. On remand, the trial court is instructed to consider each contention and rule whether Patel's statements are inadmissible on either ground.

## CONCLUSION

¶ 18 Section 32–1451(O) requires the Board to make evidence of criminal violations occurring during the delivery of health care available to the appropriate law enforcement agency. Therefore, any evidence of criminal violations by Patel obtained by the Board during the course of its investigation is not privileged by §§ 32–1451.01(C) and (E). Accordingly, we vacate the superior court order prohibiting the grand jury's consideration of evidence made available by the Board to the MCSO pursuant to A.R.S. § 32–1451(O) and remand for further proceedings consistent with this Opinion.

CONCURRING: ANN A. SCOTT TIMMER and MICHAEL J. BROWN, Judges.

---

**3.** *Compare* A.R.S. § 12–2234 (2003) *with* A.R.S. § 13–4062(2) (Supp.2006).