948 P.2d 998

**In re MARIO L.**

**No. 1 CA–JV 96–0165.**

Court of Appeals of Arizona,
Division 1, Department C.

Nov. 25, 1997.

As Amended Nov. 26, 1997.

---

Howard Grodman, Phoenix, for Appellant Juvenile.

Richard M. Romley, Maricopa County Attorney by Linda Alauria, Deputy County Attorney, Phoenix, for Appellee.

## OPINION

LANKFORD, Presiding Judge.

Appellant Mario L. appeals from a juvenile court ruling granting transfer of his case to superior court for prosecution as an adult. Because the juvenile court did not abuse its discretion, we affirm the juvenile court's transfer order.[1]

The relevant facts are as follows. When Mario was seventeen years and three months old, Appellee State of Arizona ("State") charged him with one count of aggravated assault with a deadly weapon and requested transfer to adult court for prosecution. The court denied the transfer request. At his adjudication hearing, the court found Mario delinquent and placed him on probation.

About one month later, the State charged Mario with one count of drive-by shooting and five counts of aggravated assault. The State again requested a transfer to adult court. At the hearing on May 21, 1996, the court neither granted nor denied the transfer request. Instead, the court deferred the transfer hearing for three months. He found that Mario had been cooperative with his probation officer and had complied with the terms of his probation. He believed it was reasonably likely that juvenile services would result in "Mario completely changing his direction" over the next few months.

In June, during the three-month deferral period, the State charged Mario with two counts of simple assault arising from an altercation on May 16, 1996. At the transfer hearing in August, the court granted the State's motion to transfer, noting that if it had known of this May 16 incident when it deferred transfer on May 21, it would not have done so. The court ordered that Mario's prosecution for the drive-by shooting and aggravated assault charges proceed in the adult system. Mario appealed. This Court has jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 8–236 and Rules of Procedure for Juvenile Court, Rule 24.

---

1. Disposition of Mario's appeal was delayed due to the time required to obtain a complete record of the juvenile court proceedings.

Mario argues the juvenile court erred because it terminated him from a transfer deferral program even though it found he complied with the terms and conditions of the program. The issue is whether or not the juvenile court could change or modify its ruling regarding transfer. We first address the juvenile court's authority to transfer a juvenile to adult court. We then address the court's authority to modify a deferral ruling.

■ The juvenile court has the discretion to determine the disposition of a delinquent juvenile. *Maricopa Cty. Juv. Action No. JV–110720,* 156 Ariz. 430, 431, 752 P.2d 519, 520 (App.1988). That disposition will not be overturned absent a clear abuse of discretion. *Id.* The juvenile court can waive its jurisdiction and remand a child under age 18 to the adult court for prosecution. *State v. Jiminez,* 109 Ariz. 305, 306, 509 P.2d 198, 199 (1973). In making that determination, the juvenile court must consider both the interest of public safety and several factors enumerated in the Rules of Procedure for the Juvenile Court. *See* Rule 14(c). Rule 14(c)(12) allows the court to consider "any other factors which appear to be relevant to the determination of the transfer issue." The factors the court considers must exist at the time of the hearing. *State ex rel. Romley v. Superior Court,* 172 Ariz. 109, 112, 834 P.2d 832, 835 (App.1992).

At Mario's May 21 transfer hearing, the juvenile court made appropriate inquiries. The court noted that probable cause existed but it was weak. He commented that Mario had been cooperative, had a full-time job, support from his family, and had apparently severed all ties to gang activity. The court stated the public interest and safety would be protected if the juvenile system supervised Mario. He thought a "watchful wait" would yield information regarding the wisdom of transfer. Therefore, the court deferred the transfer decision.

■ We turn now to the court's authority to revise or modify this ruling. The juve-

nile court's deferral order was interlocutory: It provided provisional relief and did not finally decide Mario's disposition. As an interlocutory order, it was subject to being modified or vacated at any time before final judgment. *Doe v. Doe,* 282 Ill.App.3d 1078, 218 Ill.Dec. 328, 331, 668 N.E.2d 1160, 1163 (1996). "Interlocutory orders ... may always be reconsidered prior to final judgment." *Langevine v. Dist. of Columbia,* 106 F.3d 1018, 1023 (D.C.Cir.1997). We therefore reject Mario's argument that the court lacked the authority to vacate the order.

■ The court had a reasonable basis to change its order. At the transfer hearing in August, the State provided the court with new information about the two assaults Mario had committed five days before the May 21 hearing. Because the police had not informed the State of the incident until June, the State could not have told the court at the hearing. The judge stated he never would have deferred his transfer decision if he had known of these two assaults. He specifically indicated that Mario did not appear to have his anger under control because he had three separate instances of assaultive behavior in a three month period. In light of this new information, the court ordered Mario's transfer to the adult court for prosecution of the drive-by shooting and aggravated assault charges.

Contrary to Mario's suggestion, nothing in the nature of the deferral program made the court's decision irrevocable. Juvenile Rule 14.1(a) provides that "[a]fter a finding of probable cause but before entry of a judgment on the transfer phase ..., judgment on the transfer issue *may* be deferred, the transfer hearing *may* be continued ... and the child *may* be placed in a transfer deferral program." (Emphasis added). The language of the rule reveals that the decision to defer transfer is discretionary.[2]

2. Pursuant to Rule 14.1, placement in a transfer deferral program occurs only if the child agrees and a writing contains the terms. The rule provides for a contractual agreement, complete with due process rights afforded to the juvenile. In Mario's case, however, we find nothing in the record suggesting Mario and the court ever reached a formal agreement. We found no writing containing program terms. The discussions on the record do not reference a written agreement. The judge merely told Mario that "watchful waiting" would help him make his decision. We do not, however, find this to be dispositive.

Mario next claims the court erred when it considered conduct which occurred *before* the May 21 hearing. He argues the court should have relied only on his behavior *after* May 21, during the deferral period.[3] Relying on Rule 14.1, Mario asserts the court had no authority to terminate transfer deferral on something other than a violation of terms or regulations of the program. However, as discussed above, the court had authority to change the deferral order because it was interlocutory. Moreover, the juvenile court must consider the particular juvenile's *past* record in deciding whether to transfer him to adult court. *See In re Maricopa Cty., Juvenile Action No. J–72804*, 18 Ariz.App. 560, 563, 504 P.2d 501, 504 (1973). Here, the court discovered additional information about Mario's past record. We see no error in considering this new information.

We affirm the juvenile court's transfer of Mario to superior court for prosecution as an adult.

GARBARINO and NOYES, JJ., concur.

---

**3.** It appears Mario did not commit any probation violations during the three month deferral period.