IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAR -2 2012

COURT OF APPEALS
DIVISION TWO

THE SALVATION ARMY, a foreign        )
non-profit corporation authorized to do  )       2 CA-SA 2011-0091
business in Arizona; JOHN            )       DEPARTMENT B
MATTHEW KELLEY; and KYNA            )
KELLEY,                             )       O P I N I O N
                                    )
                    Petitioners,    )
                                    )
              v.                    )
                                    )
HON. KYLE BRYSON, Judge of the      )
Superior Court of the State of Arizona, )
in and for the County of Pima,      )
                                    )
                    Respondent,     )
                                    )
              and                   )
                                    )
ETHAN BENNETT, a minor, through     )
ROSA S. BENNETT aka ROSE S.         )
BENNETT, his natural mother and     )
Guardian Ad Litem, and ROSA S.      )
BENNETT, a single woman in her      )
individual capacity,                )
                                    )
             Real Parties in Interest. )
                                    )

SPECIAL ACTION PROCEEDING

Pima County Cause No. C20095112

JURISDICTION ACCEPTED; RELIEF GRANTED IN PART

Goering, Roberts, Rubin, Brogna,
  Enos & Treadwell-Rubin, P.C.
  By William L. Rubin                                                    Tucson

and

Melinda K. Cekander                                                  Flagstaff

and

Renaud Cook Drury Mesaros, PA
  By William W. Drury, Jr., John A. Klecan,                            Phoenix
  and Noel C. Capps                              Attorneys for Petitioners


Mesch, Clark & Rothschild, P.C.
  By Michael J. Crawford and Douglas H. Clark, Jr.                      Tucson
                                              Attorneys for Real Parties in
                                                                    Interest

E S P I N O S A, Judge.

¶1        In this special action, petitioners the Salvation Army and John and Kyna Kelley (herein collectively referred to as the Salvation Army), defendants in the underlying personal-injury action that arose from the near drowning of real party in interest Ethan Bennett, challenge the respondent judge's order requiring them to produce redacted summaries of interviews of four of the Salvation Army's employees and six of its volunteers. An investigator had conducted the interviews at the direction of the Salvation Army's attorneys, and the Salvation Army maintains the summaries are protected by the attorney-client privilege and the work-product doctrine. We accept jurisdiction because the Salvation Army has no remedy by appeal and because "a special

action 'is the proper means to seek relief" when a party believes a trial court has ordered disclosure of material protected by a privilege or work product shield." *Green v. Nygaard*, 213 Ariz. 460, ¶ 6, 143 P.3d 393, 395 (App. 2006), *quoting Emergency Care Dynamics, Ltd. v. Superior Court*, 188 Ariz. 32, 33, 932 P.2d 297, 298 (App. 1997).

**¶2** It also is appropriate to accept special-action jurisdiction here because, at least with respect to the interviews of the Salvation Army's employees, the challenge to the respondent judge's ruling involves "a pure issue of law that may be decided without further factual inquiry." *Winner Enters., Ltd. v. Superior Court*, 159 Ariz. 106, 108, 765 P.2d 116, 118 (App. 1988). For the reasons that follow, we conclude those interviews fall within the provisions of A.R.S. § 12-2234 and therefore are protected by the attorney-client privilege. Accordingly, we vacate the respondent judge's order requiring the Salvation Army to disclose summaries of the interviews of its employees, and we direct the respondent to determine whether the Salvation Army's volunteers are its "agents" under the statute, which would render the investigator's interviews of them privileged as well.

**Background**

**¶3** The complaint filed in the underlying action alleges that the Salvation Army and "its employees, volunteers, officers and/or agents" negligently failed to provide adequately trained personnel to supervise children attending the organization's summer day camp and swimming at its Temple Corps Community Center swimming pool in Tucson. The complaint further alleges that, as a result, Ethan Bennett sustained

3

permanent injuries when he nearly drowned there on June 2, 2009. During discovery, the Bennetts sought production of "copies of all tapes and interview notes of all witnesses tape recorded and interviewed by Vivian Consoli," a private investigator retained by the Salvation Army's counsel to investigate the incident. The Salvation Army objected to production of Consoli's interview summaries on the ground that those documents were "protected by the attorney client privilege and the work-product doctrine." It also asserted the request for production was "overbroad and unduly burdensome in that it does not set a time-frame or identify the interviewees and literally asks for all tapes and interview notes for all interviews ever conducted by Ms. Consoli."

¶4        The Bennetts filed a "Motion to Resolve Pending Discovery Disputes between the Parties," listing Consoli's summaries as among "documents and information previously requested" that the Salvation Army had not produced. In response, the Salvation Army cited its earlier objections to disclosure of the summaries, maintaining "those investigative materials are privileged and will not be produced." Relying on Rule 26(b)(3), Ariz. R. Civ. P., and *Longs Drug Stores v. Howe*, 134 Ariz. 424, 430, 657 P.2d 412, 418 (1983), the Salvation Army further argued Consoli's summaries revealed its attorneys' mental processes and consequently were entitled to protection from disclosure. It also maintained the Bennetts could not show "substantial need" for Consoli's summaries of her interviews with Salvation Army employees and volunteers, as required by Rule 26(b)(3), "because they have already deposed all of The Salvation

4

Army's employees and volunteers who were at the pool on June 2, 2009, as well as some of the children who were there that day."

¶5        At a hearing on their discovery motion, the Bennetts claimed they had no ability to interview witnesses "within a couple of weeks" after the incident, as Consoli had, and so had a substantial need for any witness statements found in the summaries and no other way to obtain "what they said or remembered at that time." They asserted that "the substance of what [the witnesses] said" during the interviews "is not privileged," even if Consoli's "thoughts and impressions" in preparing the summaries were protected under the work-product doctrine.

¶6        In response, the Salvation Army noted it had released redacted summaries of interviews Consoli had conducted of children attending the day camp, as previously directed by another judge, but it argued those disclosures were justified by the "special, unique circumstances" associated with child witnesses. It maintained the interviews Consoli had conducted of the children should not be "analogize[d]" to the interviews she had conducted of Salvation Army employees or volunteers. As to the latter, the Salvation Army stated, "[A]ny of those interview summaries where she's communicating her thoughts and impressions to [counsel] are privileged. They're work product." It emphasized that, in conducting the interviews, Consoli had been an "agent of defense counsel," acting "at his order[,] undertaking directions from him[, and] reporting to him," and it maintained Consoli's summaries, made "at the specific request of defense counsel [who asked] for certain interviews . . . is work product, period." It again contended the

5

Bennetts had made no showing of "substantial need" for the summaries or an "inability" to obtain the information contained in them by other means, *see* Ariz. R. Civ. P. 26(b)(3), because they had deposed the same employees and volunteers that Consoli had interviewed.

¶7        After argument, the respondent judge directed the Salvation Army to "redact the work product" from Consoli's interview summaries and disclose the redacted summaries to the Bennetts.[1]  The Salvation Army filed a motion for reconsideration and, citing § 12-2234, argued Consoli's summaries were protected by attorney-client privilege as well as the work-product doctrine.  The respondent declined to reconsider his ruling and denied the motion without further comment.  This special action followed.

**Discussion**

¶8        We will grant special-action relief from a discovery order only if we find the respondent judge has abused his discretion or exceeded his jurisdiction or legal authority.  *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, ¶ 10, 63 P.3d 282, 284-85 (2003).  But an "'error of law . . . in the process of reaching [a] discretionary conclusion'" may constitute an abuse of discretion, and "[w]hether a privilege exists is largely a question of law, which we . . . review *de novo*."  *Id.*, *quoting Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982) (alteration in *Twin City*).

---

[1]Consistent with Rule 26(b)(3), we assume the respondent judge thus authorized the redaction of material reflecting "the mental impressions, conclusions, opinions, or legal theories" of Consoli or counsel.  Ariz. R. Civ. P. 26(b)(3).

¶9	The Salvation Army relies on both the attorney-client privilege and the work-product doctrine in arguing the respondent judge abused his discretion by ordering it to produce redacted versions of Consoli's summaries. Those concepts are distinct and often pertain to different subjects, and their application to the same material may produce different results with respect to disclosure. It appears the Salvation Army conflated the two doctrines at the hearing on the Bennetts' discovery motion. At that time, it emphasized that the Bennetts were seeking summaries of interviews of employees and volunteers, but it failed to articulate the relevance of this fact. Although the relationship of the interviewed individuals to the corporation is material to a claim that the communications were protected by the attorney-client privilege held by a corporate client, it is irrelevant to the question of whether counsel's summaries of oral statements made by witnesses are protected by the work-product doctrine.[2] *Compare* § 12-2234 *with* Ariz. R. Civ. P. 26(b)(3). Accordingly, we begin by distinguishing the two concepts.

---

[2]Relying on *Ramsey v. Yavapai Fam. Advocacy Ctr.*, 225 Ariz. 132, ¶ 18, 235 P.3d 285, 290-91 (App. 2010), the Bennetts suggest we should decline to consider the claim of attorney-client privilege because the Salvation Army did not cite and rely on § 12-2234, the statute governing the privilege, until it filed its motion for reconsideration. *See id.* (generally, arguments raised for first time in motion for reconsideration not considered on appeal in part because prevailing party below may be deprived of opportunity to fairly respond), *citing Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, ¶ 15, 159 P.3d 547, 550 (App. 2006). Our considerations are different, however, in a special action concerning nonappealable, interlocutory orders. *See* Ariz. R. P. Spec. Actions 3; *Mann v. Superior Court*, 183 Ariz. 586, 587-89, 905 P.2d 595, 596-98 (App. 1995) (granting special action relief based on argument first raised in motion for reconsideration); *cf. In re Mario L.*, 190 Ariz. 381, 383, 948 P.2d 998, 1000 (App. 1997) (interlocutory orders "'may always be reconsidered prior to final judgment'"), *quoting Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997). Moreover, whether Consoli's interviews with Salvation Army's employees were protected by attorney-client privilege

## Work-Product Doctrine

**¶10** Generally, "[p]arties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action." Ariz. R. Civ. P. 26(b)(1)(A) (emphasis added). Thus, the protection afforded an attorney's work product, codified in Rule 26(b)(3), never has pertained to privileged communications between attorney and client, but instead addresses the "discovery of documents and tangible things *otherwise discoverable* under subdivision (b)(1) of [Rule 26] and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney)." *Id.* (emphasis added).

**¶11** Under Rule 26(b)(3), disclosure of such trial preparation materials is required "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Id.* And, "[i]n ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

---

is a pure issue of law; the Bennetts have not been surprised by the objection, first asserted in the response to their request for production; and, they have had an opportunity to respond to the argument in this proceeding. *Cf. State ex rel. Horne v. Campos*, 226 Ariz. 424, n.5, 250 P.3d 201, 205 n.5 (App. 2011) (identifying factors relevant to consideration, on direct appeal, of issue first raised in motion for reconsideration).

**¶12** Significantly, the work-product doctrine affords only a qualified protection from discovery that may be overcome by "a showing of substantial need and inability without undue hardship to obtain the substantial equivalent by other means." *Butler v. Doyle*, 112 Ariz. 522, 524, 544 P.2d 204, 206 (1975). But, in contrast, a claim of attorney-client privilege "makes a discussion of substantial need and unavailability of the substantial equivalent irrelevant. Rule 26(b)(1) recognizes that privileged material is not discoverable." *Id.*

**¶13** The respondent's order directing the Salvation Army to disclose redacted versions of Consoli's interview summaries appears to have been based on the work-product doctrine. However, at least with respect to Consoli's interviews with the Salvation Army's employees, we need not determine whether her summaries were subject to disclosure under that rule or whether the respondent judge's order adequately "protect[ed] against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party." Ariz. R. Civ. P. 26(b)(3). As discussed below, if those summaries "reveal communications, they are . . . protected by the attorney-client privilege." *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981) (unnecessary to consider work-product protection where material subject to attorney-client privilege). And, "[t]o the extent they do not reveal communications, they reveal

9

the attorneys' [or investigator's] mental processes in evaluating the communications," subject to Rule 26(b)(3).[3] *Id.*

**Arizona's Attorney-Client Privilege for Corporate Clients**

¶14      In promulgating the general rule of privilege in Rule 501, Ariz. R. Evid., our supreme court has, to a large extent, "deferred to any legislative definition of 'privilege[,]' . . . [by] specif[ying] that questions of privilege are governed by the common law except when statute dictates otherwise." *State ex rel. Thomas v. Schneider*, 212 Ariz. 292, ¶ 19, 130 P.3d 991, 995 (App. 2006).[4] Before it was amended in 1994, § 12-2234 identified the attorney-client privilege as follows: "In a civil action an attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment." 1994 Ariz. Sess. Laws, ch. 334, § 1. In addition, the statute provided that "[a]n attorney's secretary, stenographer or clerk" was entitled to the same

---

[3]Arizona recognizes the application of the work-product immunity rule to investigators working for legal counsel or insurers. *See Longs Drug Stores*, 134 Ariz. at 430-31, 657 P.2d at 418-19.

[4]Rule 501, Ariz. R. Evid., provides:

> Except as otherwise required by the Constitution of the United States, the Constitution of Arizona, or by applicable statute or rule, privilege shall be governed by the principles of the common law as they may be interpreted in light of reason and experience, or as they have been held to apply in former decisions.

10

protection with respect to "any fact the knowledge of which was acquired in such capacity." *Id.*[5]

¶15 As our supreme court has observed, although it protects only the client's communications to an attorney, and not the facts known by the client, the privilege "is not without its costs. It can interfere with the search for truth when, for example, the client cannot remember that which it told its lawyer. One would like to go to the lawyer and ask." *Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 501, 862 P.2d 870, 874 (1993) (*Samaritan II*), *vacating in part Samaritan Found v. Superior Court*, 173 Ariz. 426, 844 P.2d 593 (App. 1992) (*Samaritan I*); *see also Upjohn*, 449 U.S. at 390 (privilege protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice").

¶16 Moreover, "things become complex" when the attorney's client is a corporation because "[t]he corporation is a fictional entity" that "can only act through its agents," giving rise to the question: "[W]hich communications made by the corporation's agents are those of the corporate client and not merely those of the individual speaker?" *Samaritan II*, 176 Ariz. at 502, 862 P.2d at 875.

¶17 In *Samaritan II*, our supreme court considered whether summaries of interviews of four hospital employees, conducted by a paralegal at the direction of

---

[5]Relevant in this case and addressed below, § 12-2234 was amended in 1994 to add protection for an attorney's "paralegal" or "assistant," and to identify the parameters of privileged communications with respect to an attorney for "a corporation, governmental entity, partnership, business, association or other similar entity or an employer." 1994 Ariz. Sess. Laws, ch. 334, § 1.

hospital counsel, fell under the protection of the attorney-client privilege. *Id.* at 500, 862 P.2d at 873. Plaintiffs sought production of the summaries when, at depositions two years later, the employees were unable to recall what happened in the operating room. The hospital resisted, claiming the material was protected by the attorney-client privilege and the work-product doctrine, but the trial court ordered the summaries produced for *in camera* review, stating it would "strike out [protected] attorney work product and then release to the plaintiffs those portions of the summaries that would otherwise constitute witness statements." *Id.* This court accepted jurisdiction of the special action that followed but denied relief. *Samaritan I*, 173 Ariz. at 440, 844 P.2d at 607, *vacated in part sub nom. Samaritan II*, 176 Ariz. 497, 862 P.2d 870. On review, the supreme court addressed only the issue of corporate attorney-client privilege, vacating that portion of this court's opinion. *Samaritan II*, 176 Ariz. at 500, 862 P.2d at 873.

¶18 The court in *Samaritan II* rejected the analysis in *Upjohn*, in which the United States Supreme Court concluded the attorney-client privilege protected counsel's communications with corporate employees because "'[t]he communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice.'" *Id.* at 505, 862 P.2d at 878, *quoting Upjohn*, 449 U.S. at 394. Our supreme court reasoned that extending the attorney-client privilege to any communication by a corporate employee that "concerns factual information gained in the course of performing the speaker's corporate duties" would be too broad an

12

application, because often such an employee's "connection to the liability-causing event is too attenuated to fit the classical model of what it means to be a client." *Id.* The court instead adopted a "functional approach," holding as follows:

> [W]here someone other than the employee initiates the communication, a factual communication by a corporate employee to corporate counsel is within the corporation's privilege if it concerns the employee's own conduct within the scope of his or her employment and is made to assist the lawyer in assessing or responding to the legal consequences of that conduct for the corporate client.

*Id.* at 506-07, 862 P.2d at 879-80. The court added, "This excludes from the privilege communications from those who, but for their status as officers, agents or employees, are witnesses." *Id.*

¶19 The following year, apparently in response to *Samaritan II*, the Arizona Legislature amended § 12-2234, broadening the test for corporate attorney-client privilege announced in that case.[6] The statute now provides as follows:

> A. In a civil action an attorney shall not, without the consent of his client, be examined as to any communication

---

[6]*See* 1994 Ariz. Sess. Laws, ch. 334, § 1; *Roman Catholic Diocese*, 204 Ariz. 225, ¶ 11, 62 P.3d at 974 (App. 2003) ("We conclude from the language of the statute and the legislative history that the Legislature intended to modify the ruling in *Samaritan [II]*."). "A fact sheet prepared during the legislative process by the Senate staff . . . explains that H.B. 2161 would 'enact' *Upjohn* to 'replace the case law authority of *Samaritan*, and conform the elements of Arizona's corporate attorney-client privilege to those of the federal courts and the majority of other states' courts.'" David G. Campbell, *A Legislative Response to Samaritan: Arizona's Restive Attorney-Client Privilege for Corporations*, Ariz. Att'y, Dec. 1994, at 35, *quoting* Senate Fact Sheet, H.B. 2161, 41st Leg., 2nd Reg. Sess. at 2 (Ariz. Apr. 19, 1994). According to Campbell, the statute's protections for communications are significantly broader than those envisioned by *Upjohn*. *Id.* at 33.

made by the client to him, or his advice given thereon in the course of professional employment. An attorney's paralegal, assistant, secretary, stenographer or clerk shall not, without the consent of his employer, be examined concerning any fact the knowledge of which was acquired in such capacity.

B. For purposes of subsection A, any communication is privileged between an attorney for a corporation, governmental entity, partnership, business, association or other similar entity or an employer and any employee, agent or member of the entity or employer regarding acts or omissions of or information obtained from the employee, agent or member if the communication is either:

1. For the purpose of providing legal advice to the entity or employer or to the employee, agent or member.

2. For the purpose of obtaining information in order to provide legal advice to the entity or employer or to the employee, agent or member.

C. The privilege defined in this section shall not be construed to allow the employee to be relieved of a duty to disclose the facts solely because they have been communicated to an attorney.

§ 12-2234.

¶20 Relying on *Roman Catholic Diocese of Phox. v. Superior Court*, 204 Ariz. 225, ¶¶ 6, 11, 62 P.3d 970, 973-74 (App. 2003), the Bennetts assert, "Despite changes to A.R.S. § 12-2234 enacted in 1994, *Samaritan [II]* remains the law in Arizona and the decision continues to be cited with approval by Arizona appellate courts." But the underlying proceeding in *Roman Catholic Diocese* was a criminal case, and the court there held only that the 1994 amendments to § 12-2234 did not affect the attorney-client privilege because the legislature did not similarly amend A.R.S. § 13-4062(2), the

14

"statutory codification of the attorney-client privilege in criminal cases." *Roman Catholic Diocese*, 204 Ariz. 225, ¶¶ 4, 7, 62 P.3d at 972-73. With respect to civil cases governed by § 12-2234, the court stated, "Under the 1994 amendment, *any* communications between an attorney and an employee or agent of the corporation, made for the purpose of providing legal advice or obtaining information to provide legal advice, are protected." *Id.* ¶ 6. Recognizing the legislature had "expanded" the application of attorney-client privilege beyond communications encompassed by the holding in *Samaritan II*, the court stated, "[W]e cannot say it is irrational for the Legislature to confine its expanded statutory privilege to civil actions." *Id.* ¶ 16.[7]

¶21 "When a statute's language is clear, we need not look beyond its plain language to determine its meaning." *City of Casa Grande v. Ariz. Water Co.*, 199 Ariz. 547, ¶ 22, 20 P.3d 590, 597 (App. 2001). And we will strictly construe a privilege granted by statute. *State v. Morales*, 170 Ariz. 360, 363, 824 P.2d 756, 759 (App. 1991). The language in § 12-2234, however, is broad, and it appears to apply here, at least with respect to Consoli's summaries of interviews of Salvation Army employees. Based on its express terms, the statute protects from disclosure communications between a corporation's attorney—or his "paralegal, assistant, secretary, stenographer or clerk"[8]—

---

[7]At oral argument, counsel for the Bennetts conceded the legislature's 1994 amendments to § 12-2234 have superseded the holding in *Samaritan II* with respect to civil cases.

[8]The Bennetts have not suggested the statute does not apply because Consoli was a private investigator retained by counsel, rather than a "paralegal" or "assistant." *See* § 12-2234; *see also Samaritan I*, 173 Ariz. at 432, 844 P.2d at 599 ("We believe that the

15

and "any employee, agent or member of the entity or employer regarding acts or omissions of or information obtained from the employee, agent or member . . . [f]or the purpose of obtaining information in order to provide legal advice to the entity or employer or to the employee, agent or member." § 12-2234(B).  Accordingly, we conclude the respondent judge abused his discretion in ordering the Salvation Army to disclose summaries of Consoli's interviews of its employees, even in redacted form, because those communications are protected by attorney-client privilege as defined by § 12-2234.  *See* Ariz. R. Civ. P. 26(b)(1) (discovery limited to "any matter, not privileged," relevant to subject matter of litigation); *Butler v. Doyle*, 112 Ariz. 522, 524, 544 P.2d 204, 206 (1975) (privileged material not discoverable under Rule 26(b)(1)).

**Salvation Army Volunteers as "Agents" under A.R.S. § 12-2234**

¶22        The Salvation Army maintains Consoli's interviews of its volunteers were also privileged communications under § 12-2234.  It suggests the Bennetts "presume The Salvation Army's volunteers were its agents because their claims against The Salvation Army are based, in part, upon the actions of those volunteers."  Relying on *Bond v. Cartwright Little League, Inc.*, 112 Ariz. 9, 14, 536 P.2d 697, 702 (1975), it also contends its volunteers were agents because they "submitted themselves to the direction and control of" the Salvation Army, with the "primary purpose" of serving it.  *Cf. Scottsdale*

---

legislature intended by reference to 'secretary, stenographer or clerk' [in previous version of § 12-2234] to list a representative, not exclusive, group of agents through whom a lawyer and client might confidentially confer."), *vacated in part on other grounds sub nom. Samaritan II*, 176 Ariz. 497, 862 P.2d 870.

16

*Jaycees v. Superior Court*, 17 Ariz. App. 571, 574, 499 P.2d 185, 188 (1972) (volunteer may be considered "agent" of organization for purpose of respondeat superior liability, leaving question of "when . . . agency commence[d]").

**¶23**     Although the Salvation Army's argument with respect to its volunteers has considerable appeal, we decline to address it on this limited record. Generally, whether an agency relationship exists is a question of fact, although we may determine the existence of such a relationship as a matter of law when the material facts are not in dispute. *Ruesga v. Kindred Nursing Ctrs. W., L.L.C.*, 215 Ariz. 589, ¶ 21, 161 P.3d 1253, 1259 (App. 2007). But notwithstanding the Salvation Army's assertion that its volunteers were agents who had submitted to its control, "no facts of record support those assertions." *Andresano v. Cnty. of Pima*, 213 Ariz. 65, n.4, 138 P.3d 1192, 1196 n.4 (App. 2006) (no support in record for plaintiff's asserted presence at facility "on behalf of" organization as volunteer fund-raiser). Absent development of some factual record regarding the relationship between the Salvation Army and these volunteers, we do not resolve this issue.[9]

---

[9]Should the trial court determine after remand that Consoli's interviews with Salvation Army's volunteers were not protected by Arizona's attorney-client privilege, as set forth in § 12-2234 and discussed above, and that the Bennetts have met the requirements for production under Rule 26(b)(3), *see, e.g.*, *Klaiber v. Orzel*, 148 Ariz. 320, 323, 714 P.2d 813, 816 (1986), we recommend the "approved process" for disclosure of the summaries set forth in *Samaritan I*, 173 Ariz. at 430, 844 P.2d at 597, *vacated in part on other grounds sub nom. Samaritan II*, 176 Ariz. 497, 862 p.2d 870.

## Conclusion

¶24     We conclude the respondent judge abused his discretion in ordering the Salvation Army to disclose the summaries of interviews of Salvation Army employees, prepared by an investigator at the direction of legal counsel. These communications were privileged under § 12-2234 and are not subject to discovery under Rule 26(b)(1). Consequently, we grant the Salvation Army relief in part by vacating this portion of the respondent's order. With respect to the Salvation Army volunteers, we direct the respondent to determine whether such volunteers are "agents" or "members" of the Salvation Army, as contemplated by § 12-2234(B), entitling their communications to the same privilege, and to conduct such further proceedings as are necessary, consistent with this decision.

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge