NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

WESLEY W. HARRIS, *Plaintiff/Appellant,*

*v.*

BETH MATHEWS, et al., *Defendants/Appellees.*

No. 1 CA-CV 20-0134

FILED 12-10-2020

Appeal from the Superior Court in Maricopa County
No. CV2019-092815
The Honorable Tracey Westerhausen, Judge

**AFFIRMED**

COUNSEL

Law Offices of Kimberly A. Eckert, Tempe
By Kimberly A. Eckert
*Counsel for Plaintiff/Appellant*

Elley Law PLC, Gilbert
By Richard D. Elley
*Counsel for Defendants/Appellees*

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

**C R U Z**, Judge:

**¶1**        Wesley W. Harris ("Harris") appeals a superior court order dismissing his claims against Beth Mathews ("Beth") and her husband, Harold Mathews ("Harold"). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**        This case arises from a settlement agreement, which the parties entered to resolve a prior lawsuit. The Mathewses obtained a harassment injunction against Harris after an incident between Beth and Harris in 2017. When Harold obtained a judgment against Harris for just over $2,700, Harris responded by filing a civil suit against the Mathewses, alleging defamation, malicious prosecution, and intentional infliction of emotional distress. At around this time, the City of Gilbert charged Harris with a misdemeanor for violating the harassment injunction; the trial began in late May 2018.

**¶3**        The parties, represented by counsel, negotiated a settlement agreement in which Harris agreed to dismiss the civil suit with prejudice. In return, the Mathewses agreed to sign an affidavit declining interest to pursue the pending criminal case against Harris and to "call the prosecutor and advise the prosecutor that [the Mathewses are] behind the affidavit and [do] not want the prosecution to go forward." Harold also agreed to release his judgment against Harris. The Mathewses signed the affidavit and forwarded it to the Gilbert prosecutor. Their attorney called the prosecutor on their behalf and left a voicemail regarding their "intent to drop their involvement" in the injunction against harassment prosecution.

**¶4**        The civil suit was dismissed with prejudice, but the State refused to dismiss the criminal proceedings against Harris. The Mathewses were subpoenaed to testify and did so. Harris was convicted and sentenced.

**¶5**        Harris then filed a complaint against the Mathewses, alleging breach of contract, breach of the covenant of good faith and fair dealing,

and intentional infliction of emotional distress. Harris argued that the attorney's voicemail for the prosecutor did not satisfy the contract's terms and that the Mathewses should have done more to convince the prosecutor to drop the criminal charges. The Mathewses filed a motion to dismiss pursuant to Arizona Rule of Civil Procedure ("Rule") 12(b)(6), and after oral argument, the superior court dismissed all of Harris' claims.

¶6         In its order, the court found three independent reasons to dismiss the breach of contract claims. First, contrary to Harris' position, a jury could not find the settlement agreement was to result in the dismissal of the criminal charges against Harris. Second, since victims in a criminal prosecution are not parties to the criminal case, they have no decision-making power. Therefore, there existed "no enforceable contract between the parties at all." Third, the settlement agreement attempted to confer on the Mathewses a power they did not have because only the judge can dismiss a prosecution with prejudice. As to the emotional distress claim, the court also found their actions did not constitute "extreme and outrageous" conduct as a matter of law. *See Ford v. Revlon, Inc.*, 153 Ariz. 38, 43 (1987).

¶7         Harris timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶8         We review the grant of dismissal pursuant to Rule 12(b)(6) de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8 (2012). "[W]e assume as true the facts alleged in the complaint" and will affirm the superior court's dismissal of a complaint only if the plaintiff "would not be entitled to relief under any interpretation of the facts susceptible of proof." *Fid. Sec. Life Ins. Co. v. Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4 (1998). We may affirm the order if it is correct for any reason. *Fappani v. Bratton*, 243 Ariz. 306, 309, ¶ 8 (App. 2017).

¶9         When interpreting a contract, we look to the four corners of the agreement to determine the parties' intent unless some language is vague or ambiguous. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152 (1993). "Whether contract language is reasonably susceptible to more than one interpretation . . . is a question of law for the court." *Id.* at 158-59. The disputed portion of the settlement agreement states the Mathewses agreed to execute an affidavit and "will call the prosecutor and advise the prosecutor that [the Mathewses are] behind the affidavit and [do] not want

the prosecution to go forward." We find nothing ambiguous about the language in that provision and thus rely on the agreement's plain language.

¶10 Harris argues that whether the Mathewses breached the contract was a question of fact for the jury. He acknowledges that the Mathewses prepared the affidavit and sent it to the prosecutor, and that their attorney called the prosecutor on their behalf and left a voicemail. In his reply brief, Harris contends that the fact that the Mathewses' attorney placed the call and left a voicemail constitutes a breach of the contract, because the contract required the Mathewses to contact the prosecutor directly and not via their attorney. But whether an attorney may act on behalf of his or her client is a question of law, not a question of fact. *See Robertson v. Alling*, 237 Ariz. 345, 348, ¶ 16 (2015) ("The relationship between an attorney and client is governed by agency law principles."); *Salvation Army v. Bryson*, 229 Ariz. 204, 211, ¶ 23 (App. 2012) (explaining whether an agency relationship exists is a question of law where material facts are not in dispute). Nowhere in the written settlement agreement is there an explicitly stated requirement that the Mathewses must personally call the assigned prosecutor to request dismissal of the misdemeanor charge against Harris. Moreover, Harris does not argue, and the record does not indicate, that the Mathewses' attorney did not have the authority to call the prosecutor on their behalf. Thus, as a matter of law, we find the Mathewses acted within their rights when they directed their attorney to contact the prosecutor on their behalf. As such, no breach of contract may be found on this basis.

¶11 In his complaint, Harris alleged he agreed to dismiss the civil case against the Mathewses because "he was assured that the [Mathewses] would do all they could to obtain dismissal of the criminal case." But Harris does not explain how the language in the settlement agreement could be interpreted to mean that the Mathewses were obligated to do more than they did: execute the affidavit and contact the prosecutor by phone. *See Long v. City of Glendale*, 208 Ariz. 319, 329, ¶ 33 (App. 2004). "[T]he court can accept as true the allegations in the complaint and still determine that the written language is not reasonably susceptible of the meaning asserted." *Id.* at ¶ 32. To the extent Harris argues the Mathewses should have made additional or different efforts, such terms are outside the four corners of the settlement agreement.

¶12 A victim has no authority to direct the prosecution of a criminal case, and "in some cases the wishes of the victim may be adverse to those of the prosecution." *State v. Superior Court (Wilkinson)*, 181 Ariz. 378, 381-82 (App. 1995); *see Lynn v. Reinstein*, 205 Ariz. 186, 191, ¶ 15 (2003)

(finding a victim has no "party status" in criminal proceedings). A prosecutor has broad discretion in conducting criminal proceedings. *State v. Murphy*, 113 Ariz. 416, 418 (1976). Even so, the discretion to dismiss a case remains with the court. *See State v. Gilbert*, 172 Ariz. 402, 404 (App. 1991). Accordingly, as the superior court found, if the agreement required the criminal case against Harris to be dismissed, such a contract would be invalid.[1]

¶13        As to Harris' claim that the Mathewses breached the implied covenant of good faith and fair dealing, we find dismissal appropriate. "The covenant requires that neither party 'act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.'" *Keg Rests. Ariz., Inc. v. Jones*, 240 Ariz. 64, 77, ¶ 45 (App. 2016) (quoting *Beaudry v. Ins. Co. of the W.*, 203 Ariz. 86, 91, ¶ 18 (App. 2002)). The Mathewses satisfied the terms of the settlement agreement—as acknowledged by Harris—and testified at the criminal trial pursuant to a subpoena. That the Mathewses complied with a court directive to appear at trial and give testimony does not establish sufficient evidence from which a jury could reasonably conclude the Mathewses breached the covenant. As a matter of law, Harris is not entitled to relief. To the extent Harris alleges the settlement agreement contemplated an additional benefit to him—the Mathewses refusing to cooperate with the criminal court or the dismissal of the criminal case—we find such a contract would be invalid.

¶14        Finally, Harris' complaint alleged intentional infliction of emotional distress. To prove a claim of intentional infliction of emotional distress, Harris must establish three elements: the Mathewses' conduct must be "extreme" and "outrageous"; the Mathewses must intend to cause emotional distress or "recklessly disregard the near certainty" of such distress; and such distress must occur as a result of the Mathewses' actions. *Ford*, 153 Ariz. at 43. Whether the conduct goes "beyond all possible bounds of decency" and must be regarded as "atrocious and utterly intolerable in a civilized community" is a determination for the court, and Harris misstates the law in arguing otherwise. *Shepherd v. Costco Wholesale Corp.*, 246 Ariz.

---

[1]        On appeal, Harris also alleges that without the agreed-upon efforts to dismiss the criminal case, "there was no consideration for [Harris] dismissing his civil case against [the Mathewses]." This argument overlooks the agreement provisions in which Harold agreed to release his judgment against Harris and agreed to not renew the injunction against harassment.

470, 475, ¶¶ 19-20 (App. 2019) (quoting *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 554 (App. 1995)).

¶15        Here, Harris alleged the Mathewses "fail[ed] to actually tell the prosecutor they wanted the matter dismissed, wait[ed] until right before the trial to leave a voicemail, and [testified] such that there was no conveyance to the judge that they did not want to proceed." We agree with the superior court that such alleged conduct does not remotely rise to the "extreme" or "outrageous" standard. The superior court did not err in dismissing this claim.

¶16        Both parties request their attorneys' fees and costs on appeal. In support of their request for attorneys' fees, the Mathewses argue this appeal was unjustified. On appeal, we note that Harris misrepresented the terms of the settlement agreement when he claimed the efforts to dismiss the criminal charges were the sole consideration for his agreement to dismiss his civil suit. In our discretion, we award the Mathewses a portion of their reasonable attorneys' fees, and deny Harris' request. *See* ARCAP 25 (this court "may impose sanctions that are appropriate in the circumstances of the case, and to discourage similar conduct in the future"); A.R.S. § 12-341.01(A) (the court may award successful party reasonable attorneys' fees in an action arising out of a contract). As the prevailing party, the Mathewses are entitled to their taxable costs upon compliance with ARCAP 21.

## CONCLUSION

¶17        For the foregoing reasons, we affirm the superior court's order dismissing Harris' claims against the Mathewses for failure to state a claim upon which relief could be granted, and award the Mathewses a portion of their attorneys' fees and their taxable costs on appeal.



AMY M. WOOD • Clerk of the Court
FILED:    AA